IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| BETHEL MILLIGAN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 12-CV-947-WDS |
| GRINNELL MUTUAL REINSURANCE COMPANY, | ) | |
| Defendant. | ) | |

## ORDER

**STIEHL, District Judge:**

Plaintiff Bethel Milligan brings this action seeking a declaratory judgment that defendant Grinnell Mutual Reinsurance Company's insurance policy provides coverage for plaintiff's storage units that were destroyed by a tornado. The original policy, issued years before, covered another set of storage units at a different address, but defendant accidentally changed the address to that of the units that were later destroyed. Plaintiff now moves for summary judgment (Doc. 14) seeking to exploit defendant's mistake.[1] Defendant responds (Doc. 18) that the intent of the parties is a factual dispute that should be left for the trier of fact to settle. Plaintiff has filed a reply (Doc. 21). He also moves for a hearing on his motion for summary judgment (Doc. 16).

The Court finds that it has subject-matter jurisdiction in this action. Plaintiff originally filed his complaint in the Circuit Court of the First Judicial Circuit in Saline County, Illinois. Defendant removed it here based on diversity jurisdiction. *See* 28 U.S.C. §§ 1332(a)(1), 1446. Plaintiff, an individual, is a citizen of Illinois. Defendant, a corporation, was incorporated under the laws of Iowa, with its principal place of business in Iowa,

---

[1] Plaintiff calls his motion a motion for *partial* summary judgment. However, there is only one count in the complaint against a single defendant, so the motion is not partial.

so it is a citizen of Iowa. Thus the parties are completely diverse. *See, e.g.*, *Market St. Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588, 589 (7th Cir. 1991). As to the matter in controversy, the policy limit on the insurance for plaintiff's property was $42,000 per storage unit, and all three were destroyed. Plaintiff also seeks consequential and incidental damages, and attorney's fees. The Court therefore finds that the matter in controversy exceeds the sum or value of $75,000. *See* § 1332(a). The requirements of diversity jurisdiction are met.

## BACKGROUND

Plaintiff Bethel Milligan operated a business called Energy Mart and 45 - Self Storage. In 2007, plaintiff used a broker to take out a business owner's insurance policy on three of his storage units. He instructed the broker to apply for insurance on the storage units next to the Energy Mart store, which was at 911 South Commercial Street in Harrisburg, Illinois. However, the broker instead applied for insurance on a different set of storage units owned by plaintiff, located outside the Harrisburg city limits on U.S. Highway 45, or Route 45. As it happens, South Commercial Street and Route 45 are the same road (Milligan Dep. 53:24–25, 55:1–5, Ex. 3, Doc. 18).[2] Defendant Grinnell Mutual Reinsurance Company issued plaintiff a policy covering the three storage units on Route 45.[3]

In 2008, when the policy was renewed for the following year, defendant accidentally changed the address of the storage units to 911 South Commercial, apparently because that reflected plaintiff's mailing address (Letter from Bill Cocagne, Ex. 3, Doc. 14). As the policy was renewed each year after that, the address remained 911 South Commercial, including when the policy was renewed for the 2011–2012 term (Renewal Declaration, Ex. A, Doc. 15). Meanwhile, plaintiff continued to pay the premiums. He received premium notices from time to time, and each year would receive a coverage sheet reflecting any

---

[2] As plaintiff explained in his deposition, "If anybody asked where [the storage property] was at, I might say it was Route 45 south. A lot of people know 45 and Commercial are the same one by this" (*id.*).
[3] The parties do not include the original policy as an exhibit. They both accept the letter from Bill Cocagne saying the original policy insured the property at Route 45, though (Ex. 3, Doc. 14).

changes in the value of the storage units and changes in the premiums (Milligan Dep. 58:2–16).

On February 29, 2012, a tornado blew through Harrisburg and destroyed the Energy Mart and all of plaintiff's buildings at 911 South Commercial, including the three storage units there. Perhaps knowing it was Leap Day, the tornado left the storage units at Route 45 untouched. Plaintiff called his broker's office at Williams & Associates Insurance Agency, LLC, and spoke with Judy Robinson.[4] He asked her for a quote for coverage on a piece of commercial property (Judy Robinson Aff. 2, Ex. B, Doc. 18). Robinson said she would have to get back to him after the chaos involving the tornado had calmed down. By the time she called him back, she'd heard that plaintiff had had buildings destroyed in the tornado. She asked him about the property and whether it was insured. Plaintiff replied that he had no insurance on the storage units that were destroyed. He told her Williams & Associates had coverage on a different set of units on a separate piece of property.

About a month after the tornado, on March 24, 2012, an employee of defendant's, Bill Cocagne, met with plaintiff about the tornado damage (Bill Cocagne Aff. 1, Ex. A, Doc. 18). They first met at 911 South Commercial. Cocagne saw that all five buildings had been destroyed. He asked plaintiff why he had waited a month to turn in a claim. Plaintiff responded that he did not think he had coverage on the destroyed property; he believed his policy covered the property at Route 45. They then went to the Route 45 property and inspected it. Cocagne looked at the photographs that had been taken when the initial policy was written. They matched the Route 45 property in appearance and also in the number of buildings on the property (three) (Cocagne Aff. 2–3).

Plaintiff received a letter about three weeks later, on April 16, 2012, from Cocagne denying coverage for plaintiff's losses. The letter said that, after an investigation into plaintiff's policy, the original properties insured were the three storage buildings south of

---

[4] Williams & Associates Insurance Agency, LLC is the successor to Kurt Williams & Associates Insurance Agency, LLC.

Harrisburg on Route 45. It said defendant had no intent to provide coverage for the buildings located at 911 South Commercial. "For the 2008–2009 policy renewal," Cocagne explained, "it appears the insured location was accidentally changed to reflect the mailing address rather than the covered properties" (Ex. 3, Doc. 14).

Plaintiff brings this action seeking a declaratory judgment that defendant's policy provides coverage for the storage units at 911 South Commercial Street, Harrisburg, Illinois as a result of the tornado damage, and an order directing defendant to provide coverage for his loss, as well as to pay plaintiff's consequential and incidental damages resulting from defendant's breach of the insurance policy.

## DISCUSSION

The court must grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

The Court must determine whether any factual issues exist that may reasonably be resolved in favor of either party and therefore must be submitted to the finder of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The substantive law determines which facts are material and which are immaterial. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

4

summary judgment." *Id.* at 248.

After the moving party has satisfied its burden, the burden shifts to the nonmoving party. The nonmoving party "'must do more than raise some metaphysical doubt as to the material facts; [it] must come forward with specific facts showing that there is some genuine issue for trial.'" *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (quoting *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006)). A genuine issue for trial exists "only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Argyropoulos*, 539 F.3d at 732 (quoting *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007)).

The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255.

## ANALYSIS

Plaintiff argues in various ways that defendant is responsible for the mistake in changing the address to 911 South Commercial in the 2008 policy renewal, which remained thereafter, and defendant should now be held to the express terms of the policy, particularly since defendant continued accepting plaintiff's premium payments. Plaintiff argues ratification, waiver, and unilateral mistake. He also opposes reformation of the policy. Defendant responds that a contract should be interpreted to give effect to the parties' intentions, and there is a genuine dispute as to which property the parties intended to insure, the storage units at Route 45 or at 911 South Commercial.

Before discussing those issues, the Court will briefly address an evidentiary matter. Defendant includes an affidavit from Dana Hasselbrink, who states that she is familiar with plaintiff's insurance policy, and that the document attached to her affidavit is a true and correct copy of plaintiff's billing history on the policy. Using that billing history, defendant

5

claims, among other things, that plaintiff continued paying premiums on the policy even after he was denied coverage for the tornado damage, which shows plaintiff's assent to the policy. Plaintiff objects to Hasselbrink's affidavit. He claims it is not made on personal knowledge and does not establish that she is competent to testify to the billing history. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *accord Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 & n. 2 (7th Cir. 2011). The Court agrees with plaintiff's objection that Hasselbrink does not establish that she is competent to testify. The affidavit does not say who Hasselbrink is and how she would know the billing history is accurate. The Court elects not to use Hasselbrink's affidavit or the billing history.

Plaintiff also objects that Judy Robinson's affidavit is based on hearsay to the extent that she relies on records left from plaintiff's original broker. Robinson's testimony based on those records, however, merely gives information that is already admitted by both parties; for instance, that the original insurance policy covered the storage units at Route 45 (Ex. 3, Doc. 14). So those portions of Robinson's testimony are redundant. The new evidence Robinson adds are her conversations with plaintiff after the tornado, and she does not rely on records. Plaintiff does not object to those.

*Intent*

Defendant argues that summary judgment cannot be granted because there is a genuine dispute as to which property the parties intended to insure. Defendant believes both parties intended to insure the storage units on Route 45. The original policy gave the Route 45 address; defendant's photographs of the property correspond to that address; and plaintiff told both Cocagne and Robinson after the tornado hit that he did not believe the policy covered the storage units at 911 South Commercial. Yet plaintiff states in his deposition

that he intended to insure 911 South Commercial; plaintiff believes the broker went to the wrong location when he obtained insurance for Route 45.

One of the difficulties here is that plaintiff does not discuss the elements of breach of contract. The substantive law determines which facts are material and which are immaterial. The elements are (1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) breach of contract by the defendant, and (4) resultant injury to the plaintiff. *Lake Cnty. Grading Co., LLC v. Vill. of Antioch*, 985 N.E.2d 638, 644 (Ill. App. Ct. 2013); *Timan v. Ourada*, 972 N.E.2d 744, 751 (Ill. App. Ct. 2012). A valid and enforceable contract requires an offer, acceptance, and consideration. *Sheth v. SAB Tool Supply Co.*, 990 N.E.2d 738, 754 (Ill. App. Ct. 2013). It also requires a meeting of the minds, or mutual assent to the terms of the contract. *E.g.*, *Urban Sites of Chi., LLC v. Crown Castle USA*, 979 N.E.2d 480, 496 (Ill. App. Ct. 2012); *Nat'l Prod. Workers Union Ins. Trust v. Cigna Corp.*, 665 F.3d 897, 901 (7th Cir. 2011) (Illinois law).

The issue of the parties' intent calls into question whether the insurance policy was a valid and enforceable contract to begin with. In his deposition, plaintiff says he intended to insure the storage units at 911 South Commercial. If that is true, and defendant intended to insure the storage units at Route 45, was the policy a valid and enforceable contract? There could not have been mutual assent to its terms. But perhaps plaintiff's negligence in instructing the broker, and in not reviewing the address on the original policy, bind him.

Accordingly, defendant believes that any negligence on the part of the broker is attributable to plaintiff. It is true that an insurance broker generally acts as the *insured's* agent, not the insurer's. *See Black v. Ill. Fair Plan Ass'n*, 409 N.E.2d 549 (Ill. App. Ct. 1980); *Farmers Auto. Ins. Ass'n v. Gitelson*, 801 N.E.2d 1064, 1068 (Ill. App. Ct. 2003). But a broker can also act as an agent of both parties, depending on the circumstances. *Gitelson*, 801 N.E.2d at 1068. Whether the broker is an agent of the insured or the insurer depends on who first set the broker in motion, who controlled his actions, who paid him,

7

and whose interests he was protecting. *Id.*; *Young v. Allstate Ins. Co.*, 812 N.E.2d 741, 752 (Ill. App. Ct. 2004). Defendant claims the broker was not a captive agency of defendant's, but without discussing the factors above or citing facts in the record. *See* SDIL-LR 7.1(d), (e) ("Any brief in support of or in opposition to a motion for summary judgment shall contain citation to relevant legal authority and to the record … ."). We know plaintiff instructed the broker to obtain insurance on the property at 911 South Commercial, but defendant assumes from that that the broker was plaintiff's agent. Yet we do not know who first set the agent in motion or who controlled his actions, and so forth. Without evidence, the Court cannot decide this question.

Plaintiff argues that, regardless of what the original policy said, or what the parties intended, the renewal policy that was in effect when the tornado hit listed and must provide coverage for the property at 911 South Commercial. But the original policy cannot be ignored. A renewal policy, as its name implies, is a renewal of the terms of the original policy, and those terms are included in the renewal, unless provided otherwise. *Elson v. State Farm Fire and Cas. Co.*, 691 N.E.2d 807, 814 (Ill. App. Ct. 1998); *All Am. Roofing, Inc. v. Zurich Am. Ins. Co.*, 934 N.E.2d 679, 687 (Ill. App. Ct. 2010). It is because of that principle that the insurer bears a burden of adequately informing the insured of changes in coverage at the time of renewal. *All Am. Roofing*, 934 N.E.2d at 686–87 (noting that the insured "is not required to search the fine print of each renewal policy"). Of course, the change here was accidental, so defendant could not have notified plaintiff about it.

Plaintiff does not argue that he relied on or even noticed the change in address. Indeed, both Robinson and Cocagne say plaintiff told them after the tornado that he did not believe his storage units at 911 South Commercial were covered. In other words, plaintiff simply argues a kind of "gotcha!"—that defendant made the mistake, the tornado hit, and now defendant must insure the losses. The Court does not believe matters are that simple. "The subject of mistake is one of the most difficult in the law." 1-4 ARTHUR L. CORBIN,

8

CORBIN ON CONTRACTS § 4.9 (Joseph M. Perillo rev. ed. 1993).

*Duty*

Initially, plaintiff comments that insurance companies have a duty to exercise good faith and reasonable skill, care, and diligence in writing and issuing policies. *See Central States Joint Bd. v. Cont'l Assurance Co.*, 453 N.E.2d 932, 936 (Ill. App. Ct. 1983). While that is true as a general matter, plaintiff does not establish that defendant's change of the address when it renewed the policy was a breach of that duty. Other than its being an accident, the circumstances of the mistake are unknown. The case plaintiff cites was decided on appellate review after trial in the circuit court. *See id.* ("[W]e do not conclude in this case that the record supports a ruling that defendant breached this duty … ."). Moreover, both parties have some duty to review the policy. The insured has "an affirmative duty to review the terms of a new policy," *Golf v. Henderson*, 876 N.E.2d 105, 111 (Ill. App. Ct. 2007); *Perry v. Econ. Fire & Cas. Co.*, 724 N.E.2d 151, 152 (Ill. App. Ct. 1999), which plaintiff evidently did not do. The existence of a duty on one side or the other does not hold sway on a motion for summary judgment.

*Ratification and Waiver*

Plaintiff next argues that defendant ratified the mistake in the policy by continuing to bill plaintiff and accept his payments after the change in address to 911 South Commercial. Defendant has not refunded any of the those payments.

A contract entered into by mistake may be ratified so as to make it binding on the parties as though they had fully understood it from the beginning. *Smuk v. Hryniewiecki*, 17 N.E.2d 223, 227 (Ill. 1938). However, to ratify a contract means to accept a mistake or other defect *knowingly*. *See, e.g., Freedberg v. Ohio Nat'l Ins. Co.*, 975 N.E.2d 1189, 1198 (Ill. App. Ct. 2012) (finding ratification where the plaintiff delayed his demands for rescis-

9

sion, continued paying premiums, and received benefits of the insurance policy after he learned of the alleged fraud). That is noted, albeit obliquely, in *Smuk v. Hryniewiecki*, which plaintiff cites. There, the party trying to enforce the contract, the appellee, demanded payment on a note almost two years after it was given, and threatened a lawsuit, instead of returning the note because a provision of the contract had been omitted. 17 N.E.2d at 228. The Illinois Supreme Court explained that "[a]ppellee's efforts were directed rather toward putting appellant in default under the contract *as it existed* than to rescinding it." *Id.* at 228 (emphasis added).

Plaintiff here does not claim, or offer any evidence, that defendant knew about the change in address to 911 South Commercial while it was billing plaintiff and sending policy renewals. The only evidence suggests that defendant did not discover the change until after plaintiff filed his claim for the tornado damage. About a month after the tornado, Cocagne accompanied plaintiff to both properties and consulted photographs to find out which property was meant to be insured when the original policy was written. Defendant denied coverage three weeks later. So defendant did not know about the change and could not have ratified the policy renewal. And the parties' roles here are reversed from those in *Smuk*. Unlike the appellee in *Smuk*, defendant here is not trying to enforce the insurance policy as it exists (with the mistaken address). Plaintiff is. Thus the Court does not find plaintiff's ratification argument persuasive.

Similarly, plaintiff contends that a party that retains the fruits of a contract procured by mistake (or fraud) waives any objections it might have made on those grounds. He believes that defendant retained the premiums he paid after the address was changed, and it therefore waives any objections based on the mistake. As with ratification, though, waiver assumes the waiving party knew about the mistake. *See Mosbarger v. Brown*, 145 N.E. 140, 143 (Ill. 1924) ("Where a party desires to rescind upon the ground of mistake or fraud, he must, *upon the discovery of the facts*, at once announce his purpose and adhere to

it." (emphasis added)). Plaintiff does not offer any evidence that defendant knew about the mistake until years later, after plaintiff requested coverage. Defendant denied plaintiff's request for coverage soon after he made it. Thus neither ratification nor waiver apply to the facts thus far.

*Unilateral Mistake*

Plaintiff next argues that defendant cannot rely on its own mistake. A party cannot rely on its own unilateral mistake to relieve itself of its obligations under the contract, when the party's own negligence and lack of prudence caused the mistake. *Zink v. Maple Inv. and Dev. Corp.*, 617 N.E.2d 1269, 1274 (Ill. App. Ct. 1993); *Harney-Morgan Chevrolet Olds Co. v. Rabin*, 455 N.E.2d 130, 134 (Ill. App. Ct. 1983). However, plaintiff does not establish that defendant was actually negligent, or that any negligence caused the mistake. In the primary case cited by plaintiff, *Zink v. Maple Investment and Development Corp.*, the appellate court examined the asserted mistake and found that it was not a reasonable one, given the terms of the contract. 617 N.E.2d at 1274. This Court does not have enough information to make a reasonableness determination since plaintiff does not show any facts about the circumstances of the change in address, other than Cocagne's statement that it was accidental. Plaintiff himself did not notice the Route 45 address in the original policy, or the subsequent change, so he is partly to blame himself. *See Harney-Morgan*, 455 N.E.2d at 134 (noting that the plaintiff's "otherwise inexcusable mistake" was partly induced by the actions of the defendants, who never took the time to read the document they were signing).

*Reformation*

Finally, plaintiff argues that defendant cannot reform the insurance policy, since the language of the renewal policy is clear (giving the address 911 South Commercial), and

defendant itself made the mistake in issuing it. Plaintiff cites the Illinois Supreme Court's decision in *Nat'l Union Fire Ins. Co. v. John Spry Lumber Co.*, 85 N.E. 256 (Ill. 1908).[5] For its part, defendant claims that the change of address was the result of a *scrivener's error*, that both parties intended to cover the Route 45 property, but the wrong address was inserted at the time of renewal due to a drafting error. *See Hanes v. Roosevelt Nat'l Life Ins. Co. of Am.*, 452 N.E.2d 357 (Ill. App. Ct. 1983).

In an action for reformation, a written contract may be changed to reflect the intention of the parties and the agreement between them. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.d 541, 550–51 (Ill. App. Ct. 2013); *Schivarelli v. Chi. Transit Authority*, 823 N.E.2d 158, 165 (Ill. App. Ct. 2005). That is, the parties have reached an actual understanding, but through some error their written contract does not express that understanding. *Wheeler-Dealer, Ltd. v. Christ*, 885 N.E.2d 350, 356 (Ill. App. Ct. 2008). To state a claim for reformation, a party must allege: (1) the identity of the parties, and the existence and substance of an agreement; (2) that the parties agreed to reduce their agreement to writing; (3) the substance of the written agreement; (4) that a variance exists between the parties' original agreement and the writing; and (5) mutual mistake or some other basis for reformation. *Ringgold Capital*, 993 N.E.2d at 551.

Defendant did not bring a counterclaim for reformation in this case. And its motion asking for leave to do so was denied as untimely (Doc. 23). Therefore, the issue of reformation is not properly before the Court. *Cf. Hanes*, 452 N.E.2d at 358 (appeal from trial court's denial of the the defendant's counterclaim to have the policy reformed). In any event, plaintiff's motion seeks a declaratory judgment; he asks the Court to issue an order declaring that defendant's insurance policy did insure the storage units at 911 South Commercial and that defendant is liable to plaintiff. Either the policy applied or it didn't. To decide that question, the Court need not decide whether the equitable remedy of refor-

---

[5] Plaintiff also cites the decision made below in the court of appeals, *Queen Ins. Co. v. John Spry Lumber Co.*, 138 Ill. App. 620 (Ill. App. Ct. 1908).

mation might be available to defendant (had it been raised).

## CONCLUSION

The Court **FINDS** that plaintiff has not met his burden of showing there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. His motion for summary judgment (Doc. 14) is, accordingly, **DENIED**. His motion for a hearing (Doc. 16) is also **DENIED**.

**IT IS SO ORDERED.**

**DATED: December 16, 2013**

/s/ **WILLIAM D. STIEHL**
**DISTRICT JUDGE**